LOUISE KOONTZ, RESPONDENT, v. THE CITY OF ST. LOUIS, A MUNICIPAL CORPORATION, AND ST. LOUIS BUS CO., A CORP., DEFENDANTS, CITY OF ST. LOUIS, A MUNICIPAL CORPORATION, APPELLANT.—89 S. W. (2d) 586.

St. Louis Court of Appeals. Opinion filed Jan. 7, 1936.

Motion for rehearing on modified opinion overruled Feb. 6, 1936.

*Chas. M. Hay, Edgar H. Wayman* and *Forrest G. Ferris, Jr.* for appellant.

*Eagleton, Waechter & Yost* and *Mason & Flynn* for respondent.

130

SUTTON, C.—This is an action to recover damages for personal injuries sustained by plaintiff in a fall resulting from stepping upon the defective lid or covering of a water supply box located at the intersection of Natural Bridge Avenue and Union Avenue, in the City of St. Louis.

The petition alleges that there was, on the north side of said Natural Bridge Avenue, just east of Union Avenue, a sprinkling plug or water supply box, the lid or covering of which formed a part of the traveled portion of the sidewalk and street, and that the lid or covering thereof was broken and defective and likely to cause persons stepping or walking thereon to be injured, and that it was dangerous and not reasonably safe. It further alleges that on or about June 28, 1928, plaintiff was waiting at the aforesaid intersection for the purpose of boarding one of defendant's motorbusses as a passenger, and that one of defendant's motorbusses stopped at said intersection with the entrance thereof opposite the broken and defective water supply box, and that plaintiff in attempting to board the bus as a passenger was caused to fall and be injured, all of which directly and proximately resulted from the negligence and carelessness of defendants, in the following respects, to-wit: (1) That defendant city negligently and carelessly caused, suffered, and permitted the public sidewalk or street and the lid or covering at said place to be and remain in its aforesaid defective condition; (2) that defendant city negligently and carelessly failed to exercise ordinary care to repair said lid or covering and to make and restore it in a safe condition for use and travel; (3) that the defendant city negligently and carelessly failed to exercise ordinary care to fence or guard said unsafe or dangerous portions of said sidewalk and street so as to prevent persons from walking on said

broken and defective lid or covering in using said sidewalk and street; (4) that defendants negligently and carelessly failed to warn plaintiff of the aforesaid dangerous and defective condition of said sidewalk and street and said lid or covering; (5) that the defendant bus company negligently stopped said motorbus with the entrance thereof opposite said broken and defective lid or cover, and negligently invited persons to enter said motorbus as passengers thereof; and (6) that defendant motorbus company negligently failed to exercise ordinary care to provide reasonably safe means and reasonably safe places for persons entering on said busses; and that as a direct and proximate result of the aforesaid negligence and carelessness of defendants, plaintiff sustained serious and permanent injuries to her left foot, leg and ankle, right leg, back and spine, and to her nervous system.

The answer is a general denial coupled with a plea of contributory negligence.

The reply is a general denial.

The trial, with a jury, resulted in a verdict in favor of plaintiff against the defendant City of St. Louis for $5,000, and in favor of the defendant St. Louis Bus Company, and judgment was given accordingly. Defendant City of St. Louis appeals.

Plaintiff testified that on the day of the accident which caused the injuries for which she sues, she went to the northeast corner of Union and Natural Bridge Avenues to catch a St. Louis Bus Company bus to go west on Natural Bridge Avenue; that there was quite a crowd of people waiting with her on this corner for the bus; that after a few minutes the bus came along and stopped at its regular place along the north curb of Natural Bridge just east of Union; that, starting to board the bus, she stepped off the sidewalk and with her left foot stepped onto the lid of a water box in the parkway or unpaved strip between the sidewalk and the curb, and that the lid tipped and fell in with her and she fell backwards on the sidewalk; that some gentleman helped her up; that a newsboy called a police officer, who called a taxicab, and took her home; that there were persons on each side and in front of her, quite a crowd, getting on the bus, the entrance door of which was directly opposite or adjacent to the water box; that one lady was standing right in front of her, somewhat obstructing her vision of the box; that she did not see anything defective or broken about this lid before she stepped on it; that she did not know there was a box there; that the gentleman who helped her up showed her the broken lid, one corner of which was broken off; that the cab driver and the police officer carried her into her house; that her left hip was dislocated and her right hip and left ankle injured.

Eugene Brown, a newsboy, eighteen years of age, testified, for plaintiff, as follows:

"In 1928 I sold papers at the northeast corner of Natural Bridge

and Union Avenues. I sold them about three months before the accident. I am familiar with the sprinkling box that she was talking of in her evidence. I witnessed the accident on that day about ten minutes after six or around there. This lady was standing on the corner waiting for the bus. There were several people there waiting to get on the bus, and she went to get on the bus. She stepped on this water box. When she stepped on it the lid tilted, causing her foot to go down in the box and she fell backwards. Some men standing there picked her up and set her on the sidewalk. A police officer came over and asked the lady whether she wanted to be taken to a hospital or taken home. I examined the water box lid in question after the accident. The corner of the lid was broken off. It had been broken and in that condition ever since I started to sell newspapers on that corner, that is, for about two and one-half or three months before the accident, and I had seen the lid tilt before when people stepped on it. Several times when other people had stepped on the lid it tilted with them, but they did not hurt themselves. After the accident the broken lid was replaced with a new one. The water box was located in the space of ground about two and one-half feet wide between the curb and the sidewalk on the north side of Natural Bridge Avenue, and busses regularly stopped there near the box, and people customarily used the space where the box was located to walk on to get on the bus.''

Dr. Luke Tiernon was called to attend plaintiff immediately following her injury. She was taken to his hospital. He reduced the dislocation of her hip, and afterwards treated her at her home. Dr. F. G. Pernoud made an examination of the plaintiff shortly before the trial. The testimony of both these physicians, as well as that of the plaintiff, shows that plaintiff suffered serious and permanent injuries as a result of the accident.

Defendant city contends here, as a ground for a reversal of the judgment below, that the petition does not state facts sufficient to constitute a cause of action, in that it does not allege or show that the negligence complained of caused or contributed to plaintiff's injury. There is no merit in this contention. The petition sets out with particularity the negligence complained of, and twice alleges that her injuries directly and proximately resulted from such negligence. It is true the petition does not allege the particular manner in which plaintiff was injured, as that in stepping on the broken and defective lid of the water box the lid tilted so that she was thus caused to fall and be injured, but it describes the broken and defective condition of the lid, and alleges that she was caused to fall and be injured in attempting to board the bus, all of which, it is alleged, directly and proximately resulted from the negligence of the defendants. The various acts of negligence relied on, all relating to the defective and dangerous condition of the water box lid, are then set out. It is then

alleged that as a direct and proximate result of such negligence she was injured. The petition was not attacked in any manner in the court below, not even by demurrer *ore tenus* by way of objection to the introduction of evidence. It is unquestionably good as against attack on appeal.

Defendant city further contends that there was no evidence to show that notice of her injury was given as required by section 7493, Revised Statutes 1929, Mo. St. Ann., sec. 7493, p. 5960, and on that ground assigns error for the refusal of its instruction in the nature of a demurrer to the evidence.

The statute reads as follows:

"No action shall be maintained against any city of this State which now has or may hereafter attain a population of one hundred thousand inhabitants, on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city."

The record shows that on September 11, 1928, plaintiff gave notice of her injury to defendant city in writing, stating that her injury occurred "on the 28th day of June, 1928, at about six-thirty P. M." Defendant contends that plaintiff failed to prove that her injury occurred on June 28, 1928, and thus failed to prove that she gave notice of the true date of the accident, and that such failure of proof is fatal to a recovery.

The statute, being in derogation of the common law, is construed liberally in favor of the plaintiff and strictly against the defendant, but a substantial compliance with its terms is required. [Hackenyos v. City of St. Louis (Mo.), 203 S. W. 986; Wolf v. Kansas City (Mo.), 246 S. W. 236; Boyd v. Kansas City, 291 Mo. 622, 237 S. W. 1001; Randolph v. City of Springfield (Mo.), 257 S. W. 449; Cole v. City of St. Joseph (Mo.), 50 S. W. (2d) 623; Plater v. Kansas City (Mo.), 68 S. W. (2d) 800; Beane v. City of St. Joseph, 211 Mo. App. 200, 240 S. W. 840; Adelman v. Altman (Mo. App.), 240 S. W. 272.]

Concerning the date of her injury, plaintiff testified, at the trial, on direct examination, as follows:

"Q. On June 28th were you involved in an accident at the intersection of Natural Bridge and Union Avenues here in the City of St. Louis? A. Yes, sir, the accident happened between six and six-thirty p. m."

On cross-examination she testified as follows:

"Q. What date did you say this accident occurred? A. June 29, 1928, I think it is.

"Q. June 29, 1928? A. Or June 9th, I ain't positive, but I know it was in June, 1928.

"Q. It was around June 9th or June 29th, is that correct? A. Yes.

"Q. Are you sure of that? A. No, I am not sure. It has been four years, but it was in June."

In her deposition, taken some time prior to the trial, she testified as follows:

"Q. Where were you working at the time you had your accident on June 19, 1928? A. Boyd's Clothing Company.

"Q. Were you involved in an accident on June 19, 1928? A. Yes, sir.

"Q. What day of the month was that, what day was it? A. I really can't recall."

Being asked at the trial if she had not so testified in her deposition, she answered, "I am not positive about the date."

There was no other testimony as to the date of the accident.

It thus becomes obvious that plaintiff failed to show a substantial compliance with the statute with respect to the giving of notice of the time when her injury was received. It must be observed, however, that her testimony does not affirmatively show noncompliance with the statute; it merely fails to affirmatively show compliance.

But plaintiff contends that her failure to show that notice was given in compliance with the statute is not fatal to a recovery, for the reason that failure to give notice is not pleaded. We are thus confronted with a question of first impression in this State. It was definitely ruled by our Supreme Court, in the recent case of Cole v. City of St. Joseph, 50 S. W. (2d) 623, l. c. 626, wherein the court had under review a statute substantially the same as the statute with which we are here concerned, that plaintiff is not required to plead the giving of the notice as part of her cause of action. But the court declined to decide whether defendant is required to plead failure to give the notice.

In that case, the court quoted, with evident approval, from Beane v. City of St. Joseph, supra, as follows:

"Where the cause of action is created by the common law the condition is not a part of plaintiff's cause of action, but is a matter of evidence. We think then that neither the notice nor the conditions need be pleaded in the petition."

The court also quoted, with evident approval, from the dissenting opinion in Hackenyos v. City of St. Louis, supra, as follows:

"As to the common-law class of actions there is no statute, code, or common law rule of pleading which requires the performance of the condition to be pleaded, and the obvious reason for that omission is the fact that the condition forms no part of the plaintiff's case."

If the performance of the condition need not be pleaded by the plaintiff because it forms no part of the plaintiff's case, it logically follows that nonperformance becomes a matter of defense which must be pleaded. How else could the matter of performance be put in issue? Though, as said in the Beane case, the giving of the notice as required by the statute is a matter of evidence, it is not a probative or evidentiary fact, that is to say, it is not a fact going to prove any ultimate or issuable fact alleged in the petition. It is itself an ultimate or issuable fact. A general denial puts in issue only the ultimate or issuable facts alleged in the petition. It denies no other fact. The well recognized rule is that no facts can be proved under a general denial except such as go to show that the ultimate or issuable facts alleged in the petition are untrue. [Bolton v. Missouri Pacific Ry. Co., 172 Mo. 92, 72 S. W. 530; Enright v. Schaden (Mo.), 242 S. W. 89; Holdsworth v. Shannon, 113 Mo. 508, 21 S. W. 85; Stein v. Battenfeld Oil & Grease Co. (Mo.), 39 S. W. (2d) 345; Greenway v. James, 34 Mo. 326; Hellmuth v. Benoist, 144 Mo. App. 695, 129 S. W. 257.]

The case here is not one in which the plaintiff's cause of action was created by the statute. The giving of the notice was not essential to make out her cause of action. She had a perfectly valid cause of action at common law as soon as she was injured. [Randolph v. City of Springfield (Mo.), 257 S. W. 449, 1. c. 451.]

We think the statute goes to the remedy rather than the right. Its evident purpose is to give the defendant an early opportunity to investigate the facts and circumstances of the injury. It was enacted for the protection of the defendant against imposition. It was not enacted to be used as a means of working an imposition on the plaintiff. If the defendant proposes to put the matter of notice in issue, it should, in fairness to the plaintiff, do so by appropriate pleading.

Defendant reminds us of the statement of the Supreme Court, in Cole v. City of St. Joseph, supra, that, though plaintiff need not plead the giving of the notice, "she must make proof of such fact in order to recover," and insists that this is tantamount to saying that failure to give the notice need not be pleaded. It is evident, however, that the court did not intend that the statement be so interpreted, for the court at once proceeded to make this clear in the following language:

"It is not necessary here to discuss or decide whether it is necessary for defendant to plead in its answer the failure of plaintiff to give the notice of her injury required by the statute. It would seem to be proper at least for defendant to do so. Even if we hold that defendant is required to do this and has not done so, it would not avail plaintiff anything. Plaintiff is here asking for a new trial after an adverse verdict, and if that be granted, defendant would have a right to amend its answer in this respect. Since we are holding that,

on the conceded facts, no sufficient notice has been given by plaintiff, and that effectually bars her recovery, a new trial would be useless.''

It is obvious from this language that the court did not mean to be understood as ruling that the plaintiff must make proof of the giving of the notice without regard to whether or not failure to give the notice is pleaded.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.